NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **COLLEEN KENNEDY and DAVID FOSTER, on behalf of themselves and all other persons similarly situated,**<br><br>Plaintiffs,<br><br>v.<br><br>**SAMSUNG ELECTRONICS AMERICA, INC.,**<br><br>Defendant. | Docket No.: 14-4987<br><br>**OPINION** |

## **WILLIAM J. MARTINI, U.S.D.J.:**

This is a putative consumer class action. The instant matter comes before the Court on Defendant Samsung Electronics America's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs opposed. There was no oral argument. L. Civ. R. 78.1(b). For the reasons set forth below, the motion is granted in part and denied in part.

## **I. JURISDICTION**

The named Plaintiffs are citizens of California. Samsung is a corporation incorporated in New York. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d) (2), because at least one class member is of diverse citizenship from the Defendant, there are more than 100 class members nationwide, and the aggregate amount in controversy exceeds $5,000,000.

## II.     BACKGROUND

The Complaint alleges that Samsung concealed a defect in a series of washing machines.  The defect arises "from the design and use of a flimsy plastic housing covering the drain pump which breaks and pulls the poorly connected drain hose off the machine resulting in the flooding of homes, and causing electrical malfunctioning." (Complaint at ¶ 2).  "The defect is exacerbated by Samsung's inability to provide replacement parts for the housing covering the drain pump, and broken mounts for the motor." (*Id.*).

A Samsung advertisement for the washer stated: "Samsung's VRT provides a quieter wash so you'll hardly know it's on.  Special sensors keep your load balanced even at high spin speeds.  Now you can install your washer on the second floor or near bedrooms without being disturbed by noise." (Complaint at ¶ 24).

Plaintiffs Colleen Kennedy and David Foster allege that they relied on this advertisement when, on December 26, 2012, they purchased a new Samsung Top Load Washer (model number WA400PJHDWR) from Lowe's located in San Diego, California for $539 plus tax and other charges.  (*See* Complaint at ¶¶ 1, 12, 152). The washer came with a limited one-year warranty on parts and workmanship. (Complaint at ¶ 12).  The drain pump housing in Plaintiffs' washing machine broke shortly after the expiration of this warranty.  On January 4, 2014, while washing a few tablecloths, the washer began to leak water on the floor.  (Complaint at ¶ 14). The flood was ankle-deep.  (*Id.*).

After doing some internet research, Kennedy discovered common and recurrent complaints about the drain pump housing breaking, which resulted in flooding. (Complaint at ¶¶ 15, 44-48). When Kennedy discovered this common and recurrent problem related to the drain pump housing, she asked Samsung for a refund or replacement.  (*Id.* at 15).  Samsung would not honor this request, but Samsung did agree to send a technician and to replace the plastic housing with a sturdier, redesigned metal drain pump housing, all at no charge.  (*Id.*).  The Samsung technicians confirmed that the drain pump housing was broken, but because a metal housing could not be acquired, the repair was completed with another plastic pump housing.  (*Id.*).  Plaintiffs allege that this repair is inadequate because the plastic pump housing will break again, resulting in flooding and the danger of electrocution attendant to frayed wires and leaking water.  (*See* Complaint at ¶¶ 7, 20, 44-45).

Plaintiffs allege that Samsung was aware of the drain pump housing defect at the time of sale but concealed the defect from customers.  Plaintiffs allege that

Samsung was aware that the defect was actually not repairable and refused to replace the defective machines or refund defrauded customers. (Complaint at ¶¶ 39-45).

Plaintiffs filed a six-count Complaint. The counts are:

**COUNT 1:** California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*

**COUNT 2:** California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*

**COUNT 3:** California's Consumer Legal Remedies Act ("CLRA"), Cal. Bus. & Prof. Code § 1750 *et seq.*

**COUNT 4:** Breach of Express Warranty, Cal. Civ. Code § 1790 *et seq.*, Cal. Comm. Code § 2313.

**COUNT 5:** Breach of Implied Warranty, Cal. Civ. Code § 1790 *et seq.*

**COUNT 6:** Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*

## III.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998) (*citing Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). "[D]etermining whether a complaint states a plausible claim is context-specific,

requiring the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.* at 678.

## IV. DISCUSSION

Samsung characterizes the Complaint as essentially a consumer fraud action. It argues that the fraud-based claims (Counts 1-3) must be dismissed because the fraud is not pled with specificity or because elements of each of the three consumer fraud statutes have not been pled. These arguments are not persuasive. Samsung also argues that the warranty claims (Counts 4-6) should all be dismissed as untimely. This argument is persuasive.

### A. Specificity of Fraud-Based Claims

Plaintiffs must plead their fraud-based claims under the CLRA, UCL, and FAL with specificity pursuant to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). "While fraud is not a necessary element of a claim under the CLRA and UCL, a plaintiff may nonetheless allege that the defendant engaged in fraudulent conduct," and where a plaintiff's claim is "grounded in fraud" the pleading "as a whole must satisfy the particularity requirement of Rule 9(b)." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). "The well-known elements of a cause of action for fraud are: (1) a misrepresentation, which includes a concealment or nondisclosure; (2) knowledge of the falsity of the misrepresentation, i.e., scienter; (3) intent to induce reliance on the misrepresentation; (4) justifiable reliance; and (5) resulting damages." *Cadlo v. Owens-Illinois, Inc.*, 125 Cal. App. 4th 513, 519 (2004), *as modified* (Dec. 30, 2004). Samsung argues that the following elements of fraud claims were not pled with specificity: 1) knowledge of the defect and 2) misrepresentation or concealment. The arguments are not persuasive.

Plaintiffs specifically allege that Samsung knew of the defects based on "requests for warranty service detailing the specific problems suffered by the Plaintiffs made to the Samsung Authorized Service Centers, and the GSPN (Global

4

Service Partnership Network) Service Center which maintains detailed records of the complaints, model and serial number and details the work performed on the machines in an attempt to correct the problem." (Complaint at ¶ 44). The Complaint alleges that Samsung "utilizes Service Bench online software to track warranty claims which provides Samsung with the ability to mine data for strategic information about its products and the nature of repair claims."  (*Id.*). "Consequently, Samsung should have been aware of the large number of similar, repeat complaints received regarding specific models and the failure of repairs attempted over and over again to remedy those specific defects." (*Id.*).  Plaintiffs also allege that Samsung has issued several Service Bulletins related to the "ASSY PUMP DRAIN" and "ASSY WIRE HARNESS" advising that washers produced before December 31, 2012 cannot be modified to correct the problem.  (Complaint at ¶ 45).  These allegations sufficiently and specifically allege Samsung's knowledge of the alleged defective drain pump housing.

This case is, at least partially, based on a fraudulent concealment theory.  Because a plaintiff alleging an omission-based fraud will "not be able to specify the time, place, and specific content of an omission as would a plaintiff in a false representation claim," allegations of a fraudulent omission are not held to the same standard of specificity. *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1096 (N.D. Cal. 2014) (*citing Baggett v. Hewlett–Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007); *Falk v. General Motors Corporation,* 496 F. Supp. 2d 1088, 1098-99 (N.D. Cal. 2007)).

The Plaintiffs' allegation of fraudulent omission is sufficiently specific to enable Samsung to prepare a responsive pleading. *See Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1170 (E.D. Cal. 2013) ("Perhaps the most basic consideration for a federal court in making a judgment as to the sufficiency of a pleading for purposes of Rule 9(b) is the determination of how much detail is necessary to enable an adverse party to prepare a responsive pleading.  Rule 9(b) requires no more.") (internal citations omitted).  The Complaint alleges that Samsung concealed the fact that the washing machines had a latent, unfixable design defect – a flimsy drain pump housing that breaks and frays wires, causing flooding and attendant risk of electrocution. (Complaint at ¶¶ 51-61).  This is enough information for Samsung to respond to the Complaint with appropriate admissions or denials.

### B. Contested Elements of the Consumer Fraud Claims

#### 1. CLRA

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any customer." Cal. Civ. Code §1770(a). Such acts and practices include representing that goods have characteristics that they do not have, representing that goods are of a particular quality when they are of another, and advertising goods with the intent to not sell them as represented. Cal. Civ. Code § 1770(a). Under the CLRA, misconduct is only actionable if it would deceive a "reasonable consumer." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Samsung argues that its one-year limited warranty renders it unreasonable for any consumer to think that Samsung would be responsible for latent design defects.

While reasonable consumers would know that they might have to expend money for repairs after a year of owning the washer, the warranty would not put reasonable consumers on notice of a latent defect that would perpetually expose them to a high risk of recurrent flooding. A consumer's belief that the machine would not cause flooding is all the more reasonable where, as here, Samsung advertising stated that the washing machine could be stored on the second floor of a home or near bedrooms. (Complaint at ¶ 24). Although the advertisement clearly states that the washer's low noise level is the reason that it is suitable for use on a second floor or near bedrooms, the suggestion of storing it in these places would lull a reasonable consumer into thinking that it is also safe to keep the product in these places, where flooding would be even more potentially devastating than it would be on a first-floor laundry room or in a basement, where such appliances are typically kept.

Samsung makes a second argument for dismissal of the CLRA claim. When a CLRA claim revolves around a latent defect that arises after the expiration of a warranty, the plaintiff must allege that the defendant breached a duty to disclose the latent defect. *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006), *as modified* (Nov. 8, 2006). The parties dispute the legal standard for when a duty to disclose arises, however, even applying the standard less favorable to Plaintiffs, the CLRA claim survives.

Under this less favorable standard, a plaintiff seeking recourse under the CLRA for fraudulent concealment of a defect manifesting after the expiration of the

warranty must allege "an affirmative misrepresentation or a safety issue." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012). In order to establish a safety risk, the plaintiff must allege a plausible "nexus between the alleged design defect and the alleged safety hazard." *Id.* at 1144. It is plausible that water flooding the room where a washing machine is located could come in contact with wiring and would pose a risk of electrocution. This is all the more plausible where the pump housing frays internal wires when it fails. (*See* Complaint at ¶ 20).

### 2. FAL

"The FAL prohibits the making or dissemination of any statement that is 'untrue or misleading, and which is known, or by exercise of reasonable care should be known, to be untrue or misleading.'" *Scheuerman v. Nestle Healthcare Nutrition*, 2012 U.S. Dist. LEXIS 99397, at *20 (D.N.J. 2012) (*quoting* Cal. Bus. & Prof. Code § 17500). In order to state a claim under the California FAL, plaintiffs must allege that statements or other representations are "likely" to deceive a reasonable consumer. *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995). If an alleged misrepresentation would not deceive a reasonable consumer, or if it amounts to mere puffery, then this claim may be dismissed. *Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1399 (E.D. Cal. 1994). California courts have defined the "reasonable consumer" as an ordinary member of the public who acts reasonably in the situation presented. *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 510, 512 (Cal. App. 2003).

"The FAL requires an untrue or misleading statement," and claims based upon "omissions" do not suffice under the statute. *Stanwood v. Mary Kay, Inc.*, 941 F. Supp. 2d 1212, 1222 (C.D. Cal. 2012); *Marchante v. Sony Corp. of Am.*, 801 F. Supp. 2d 1013, 1019 (S.D. Cal. 2011) ("Plaintiffs' FAL claim fails because Plaintiffs do not identify any specific statements made by Defendants.").

But although the FAL does not permit a cause of action based wholly on an "omission," it does permit a cause of action based on "advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002); *see also Ariz. Cartridge Remfrs. Ass'n, Inc. v. Lexmark Int'l, Inc.*, 421 F.3d 981, 985 (9th Cir. 2005) (stating that the FAL encompasses not just false statements, but also those that "may be accurate on some level, but will nonetheless tend to mislead or deceive."). For example, a court found that plaintiffs had stated a claim under the FAL where Ford advertised a vehicle's capacity to fit 15 people when the vehicle's center of gravity was too high to safely operate with 15 people inside. *In re Ford*

*Motor Co. E-350 Vans Prods. Liab. Litig.*, 2008 U.S. Dist. LEXIS 73690 (Sept. 3, 2008). Tobacco advertisements that failed to mention the health risks of smoking could violate the FAL. *In re Tobacco II Cases*, 46 Cal. 4th 298, 309 (2009). Similarly here, the statements about keeping the washing machine on the second floor or near the bedroom plausibly lulled reasonable consumers into believing that the washing machine would not leave owners subject to imminent and repeated flooding.

### 3.     UCL

Conduct violating the UCL includes "any unlawful, unfair or fraudulent business act or practice . . ." Cal. Bus. & Prof. Code § 17200. Samsung makes two arguments for dismissal of the UCL claim: 1) failure to allege an "unlawful, unfair, or fraudulent practice" and 2) failure to allege an injury in fact.

The unlawful prong of the UCL prohibits "anything that can properly be called a business practice and that at the same time is forbidden by law." *Baxter v. Salutary Sportsclubs, Inc.*, 122 Cal. App. 4th 941, 947 (2004). The UCL permits consumers to "borrow" violations of other laws and treat them as independently actionable UCL violations. *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1153 (2000). Since the Plaintiffs have alleged violations of the CLRA and the FAL, they have satisfied the "unlawful" prong of a UCL claim.

A plaintiff needs to allege an injury in fact in order to have standing under the UCL. *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 321-22 (2011). To satisfy the injury in fact requirement, a party must establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*." *Id.* at 322. Among the "innumerable" ways a party may show economic injury is by demonstrating one of the following:

> [that he or she] (1) surrender[ed] in a transaction more, or acquire[d] in a transaction less, than he or she otherwise would have; (2) ha[d] a present or future property interest diminished; (3) [was] deprived of money or property to which he or she ha[d] a cognizable claim; or (4)[was] required to enter into a transaction, costing money or property, that would otherwise have been unnecessary.

*Id.* at 323.

Samsung argues that Plaintiffs have suffered no injury in fact because Samsung replaced the flimsy plastic pump housing with another flimsy plastic pump housing, free of charge. This argument is not persuasive because the core of the Plaintiff's Complaint is the repeated risk of flooding, not simply that the machine broke one time. Plaintiffs plausibly allege that if they had known they were purchasing imminent and repeated flooding along with a washing machine, they would never have "surrendered" their money for that machine.

### C. Breach of Express Warranty

The *Dougherty* court wrote:

> The law governing express warranties is clear. A warranty is a contractual promise from the seller that the goods conform to the promise. If they do not, the buyer is entitled to recover the difference between the value of the goods accepted by the buyer and the value of the goods had they been as warranted. (Cal. U. Com. Code, §§ 2313, subd. (a) & 2714, subd. (2).) A seller may limit its liability for defective goods by disclaiming or modifying a warranty. (*Krieger v. Nick Alexander Imports, Inc.* (1991) 234 Cal. App. 3d 205, 212-213, 285 Cal. Rptr. 717.).

144 Cal. App. 4th at 830. It is undisputed that the Plaintiffs did not put Samsung on notice of their problem until after the expiration of the express one-year warranty. However, this does not preclude Plaintiffs from amending the Complaint by adding other putative class representatives who did report the defect to Samsung during the warranty period. *See Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1141 (C.D. Cal. 2005) ("The Court finds that Annunziato's express warranty has expired, and hence his claims based on breach of the express warranty fails as a matter of law. However, the Court grants Annunziato leave to join another potential class representative who has a claim which is not time-barred.").

Plaintiffs alternatively argue that the time limitations were unconscionable and therefore unenforceable. In *Marchante v. Sony Corp. of Am.*, 801 F. Supp. 2d 1013, 1022 (S.D. Cal. 2011), the court explained:

> "The law of contractual unconscionability ... requires both procedural and substantive unconscionability." *In re Toyota Motor Corp.*, 2010 WL 4867562, *26 (C.D. Cal. Nov. 30, 2010). Importantly, the two types of unconscionability need not be present to the same degree.

> *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114, 99 Cal. Rptr. 2d 745 (2000). The standard operates on a sliding scale where an increase of one decreases the need for the other. *Id.* Procedural unconscionability focuses on "oppression or surprise due to unequal bargaining power." *Armendariz*, 24 Cal. 4th at 114, 99 Cal. Rptr. 2d 745, 6 P.3d 669. "Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice." *Aron v. U-Haul Co. of Ca.*, 143 Cal. App. 4th 796, 808 (Cal. Ct. App. 2006) (internal formatting omitted). . . . [T]he existence "of meaningful alternatives available to such contracting party in the form of other sources of supply tends to defeat any claim of [procedural] unconscionability." *Dean Witter Reynolds, Inc. v. Super. Ct.*, 211 Cal. App. 3d 758, 771, 259 Cal. Rptr. 789 (Cal. Ct. App. 1989). . . . The substantive prong focuses on the actual terms of the agreement and whether the agreement creates overly harsh or one-sided results that shock the conscience. *Aron*, 143 Cal. App. 4th at 808.

801 F. Supp. 2d at 1022.

Here, the procedural aspects of unconscionability are nil because the Plaintiffs had a choice among many washing machines. Plaintiffs may not have been able to dictate the terms of the limited warranty, but they could have chosen not to purchase the washer if they did not like the limited warranty.

The length of the warranty is also not substantively unconscionable. One-year warranties on home appliances are common. *See, e.g.*, *Apodaca v. Whirlpool Corp.*, No. 13-725, 2013 WL 6477821, at *1 (C.D. Cal. Nov. 8, 2013) (dishwashers); *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1143 (N.D. Cal. 2010) (washing machines); *Kuzian v. Electrolux Home Products, Inc.*, 937 F. Supp. 2d 599, 611 (D.N.J. 2013) *reconsideration granted*, No. 12-3341, 2013 WL 6865083 (D.N.J. Dec. 30, 2013) (refrigerators). Moreover, there are other remedies available, namely, the successfully-pled consumer fraud statutes.

### D. Breach of Implied Warranty

The duration of the implied warranty is the length of the express warranty. *In re Sony Grand Wega*, 758 F. Supp. 2d at 1100-01 (*applying* Cal. Civ. Code § 1791.1(c)). The statute provides that "in no event shall such implied warranty have a duration of less than 60 days nor more than one year following the sale of new

consumer goods to a retail buyer." Cal. Civ. Code § 1791.1(c). This disposes of the implied warranty claims of these particular Plaintiffs.

### E. Magnuson-Moss Warranty Act

Plaintiffs' final claim is for breach of express warranty and the implied warranty of merchantability under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301. A claim under the MMWA relies on an underlying state law warranty claim. *Johansson v. Cent. Garden & Pet Co.*, 804 F. Supp. 2d 257, 265 (D.N.J. 2011); *Cincinnati Ins. Companies v. Hamilton Beach/Proctor-Silex, Inc.*, No. 05-49, 2006 WL 299064, at *1 (N.D. Ind. Feb. 7, 2006). Where state law claims warrant dismissal, an accompanying MMWA claim must also be dismissed. *Cooper v. Samsung Elecs. Am., Inc.*, 374 Fed. Appx. 250, 254 (3d Cir. 2010); *see Johansson*, 804 F. Supp. 2d at 265 (dismissing MMWA claim based on failure of plaintiffs' California warranty claims). Because such is the case here, Plaintiffs' MMWA claim must be dismissed.

### V. CONCLUSION

For the reasons set forth above, the motion is **DENIED** with respect to Counts 1, 2, and 3, and the motion is **GRANTED** with respect to Counts 4, 5, and 6. Dismissal of Counts 4, 5, and 6 is without prejudice.

/s/ William J. Martini

_____
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: May 5, 2015**